UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Perry Sullivan, #352667 | ) | C/A No. 5:20-cv-03333-JD-KDW |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Report and Recommendation |
| C Truesdale and the South Carolina Department of Corrections, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding pro se, brought this civil rights action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. This matter is before the court on Defendants' Motion for Summary Judgment filed on May 3, 2021. ECF No. 54. As Plaintiff is proceeding pro se, the court entered a *Roseboro*[1] order on May 4, 2021, advising Plaintiff of the importance of such motions and of the need for him to file an adequate response. ECF No. 55. Plaintiff responded to the Motion on May 13, 2021, ECF No. 60, and Defendants filed a Reply on May 19, 2021, ECF No. 61. Additionally, Plaintiff filed a Sur Reply on May 28, 2021. ECF No. 62. This case was referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(d) and (e), D.S.C. Because this motion is dispositive, a Report and Recommendation ("R&R") is entered for the court's review.

I. **Factual and Procedural Background**

Perry Sullivan was an inmate at McCormick Correctional Institution during the time period relevant to his Complaint. ECF No. 1. In his Complaint, Plaintiff maintains causes of

---

[1] *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975) (requiring the court provide explanation of dismissal/summary judgment procedures to pro se litigants).

action against Defendants Officer C. Truesdale and the South Carolina Department of Corrections ("SCDC"). *Id.* at 2-3. Specifically, pursuant to 42 U.S.C. § 1983, Plaintiff alleges that Defendant Truesdale violated his constitutional rights on February 23, 2019, "when he physically assaulted Plaintiff Sullivan by grabbing his arm through the food-flap door and twisting and bending it out of joint, and then slamming it in the food-flap door causing bone fracture, swelling and bruising." *Id.* at 6. Plaintiff labels his claim against Defendant Truesdale as a "federal claim," and he labels his claim against SCDC as a "state law claim." *Id.* He maintains that SCDC, through the action of its employee, Defendant Truesdale, was negligent and grossly negligent in violation of the South Carolina Tort Claims Act ("SCTCA"). *Id.* at 6-7.[2] Plaintiff alleges that SCDC, through Defendant Truesdale, "intentionally or recklessly inflicted severe emotional distress upon [him], or was certain to substantially certain such distress would result from his conduct. . . ." *Id.* at 7. Plaintiff claims to have suffered a bone fracture, pain and

---

[2] In his Response to Defendants' Motion for Summary Judgment, Plaintiff voluntarily dismissed SCDC as a party to this action. *See* ECF No. 60 ("Plaintiff makes the court aware that he hereby voluntarily dismiss[es] Defendant [SCDC], and all claims brought against it from this action."). Further, Plaintiff represents that he will proceed "solely against Defendant Truesdale, in his individual capacity, for excessive force. *Id.* at 1-2. Under Rule 41(a)(2), a district court may dismiss an action "at the plaintiff's request only by a court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). "The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987). "In considering a motion for voluntary dismissal, the district court must focus primarily on protecting the interests of the defendant." *Id.* "A plaintiff's motion under Rule 41(a)(2) should not be denied absent substantial prejudice to the defendant." *Andes v. Versant Corp.*, 788 F.2d 1033, 1036 (4th Cir. 1986). Unless the order states otherwise, a dismissal under Rule 41(a)(2) is without prejudice. Fed. R. Civ. P. 41(a)(2). Plaintiff has indicated that he seeks to dismiss his action against SCDC, and Defendants have consented to such but request the dismissal be *with* prejudice. *See* ECF No. 61 at 1 (emphasis added). They take this position because "Plaintiff offers no response to the legal arguments concerning Defendant SCDC. . . ." *Id.* Plaintiff did not respond to Defendants' argument regarding dismissal of SCDC with prejudice. Based on Plaintiff's non-response and his failure to address Defendant SCDC's summary judgment arguments concerning it, the undersigned recommends that Defendant SCDC be dismissed as a party to this action pursuant to Rule 41(a)(2) *with prejudice*. Accordingly, the final six arguments presented in the summary judgment motion will not be discussed herein.

suffering, swelling, bruising, and mental and emotional distress. *Id.* at 8. Plaintiff seeks a jury trial, actual and punitive damages, costs, and any further relief the court deems appropriate. *Id.* at 9.

II. **Standard of Review**

The court shall grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the initial burden of demonstrating that summary judgment is appropriate; if the movant carries its burden, then the burden shifts to the non-movant to set forth specific facts showing that there is a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). If a movant asserts that a fact cannot be disputed, it must support that assertion either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials;" or "showing . . . that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1).

In considering a motion for summary judgment, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248. Further, while the federal court is charged with liberally construing a Complaint filed by a pro se litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319, 322 (1972), the requirement of liberal construction does not mean that the

court can ignore a clear failure in the pleadings to allege facts that set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact when none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

### III. Analysis

#### A. § 1983 Excessive Force

Defendant Truesdale argues that he is entitled to summary judgment because no force was used against Plaintiff, or any such force was objectively trivial, and he lacked the wrongful state of mind for an excessive force claim in light of the facts of this case. ECF No. 54-1 at 3. In citing to affidavits attached to his brief, Defendant Truesdale represents that on the day in question, Plaintiff reached through the open food flap of his door and grabbed defendant Truesdale's vest during feeding time. *Id.* at 4. Further, he argues:

> Rather than "twisting and bending [Plaintiff's arm] out of joint," or "slamming it in the food-flap door," (Dkt. 1 at 6), Defendant Truesdell simply held onto it after discovering he could not break away from Plaintiff's grasp and called for help. (Truesdell Aff. ¶¶ 7, 12) While Defendants recognize this Honorable Court's general obligation to adopt Plaintiff's version of events in deciding the instant motion, Defendants note this obligation applies only to Plaintiff's facts which are genuinely in dispute. *See* FED. R. CIV. P. 56(a).

*Id.* at 4-5.

In Response to the Motion, Plaintiff asserts that he "never" grabbed Defendant Truesdale's vest, and he put his hand through the food flap "to wait for an extra food tray that he was expecting to receive from another officer. . . ." ECF No. 60 at 2. Plaintiff refers to the Incident Report and his own declaration in support of this position. *Id.* Further, Plaintiff refers to a statement from an "inmate witness who was living next door to [Plaintiff] when the incident occurred and had observed the entire incident." *Id.* Plaintiff also refers to "the use of force video" and "medical reports from Nurse Elizabeth McDowell." *Id.* at 3. Additionally, Plaintiff

4

argues that in the incident report Defendant Truesdale did not allege or mention that Plaintiff had grabbed his vest. *Id.* at 4.

In Reply, Defendants present several new arguments to the court pursuant to *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) and collateral estoppel that will be addressed in the following section. ECF No. 61. Defendants also argue that certain portions of Plaintiff's witness's affidavit should be stricken for failure to comply with Rule 56(c)(4). *Id.* at 5. Defendants also address the evidence Plaintiff presented in his Response and indicate why what is presented is not credible. *Id.* at 8-12.

In order to state a claim pursuant to 42 U.S.C. § 1983, a plaintiff must allege (1) that he or she "has been deprived of a right, privilege or immunity secured by the Constitution or laws of the United States," and (2) "that the conduct complained of was committed by a person acting under color of state law." *Dowe v. Total Action Against Poverty in Roanoke Valley*, 145 F.3d 653, 658 (4th Cir. 1998) (citing 42 U.S.C. § 1983). The Eighth Amendment prohibition of cruel and unusual punishment "protects inmates from inhumane treatment and conditions while imprisoned." *Williams v. Benjamin*, 77 F.3d 756, 761 (4th Cir. 1996).

To establish a constitutional excessive force claim, the inmate must establish that the "prison official acted with a sufficiently culpable state of mind (subjective component); and [that] the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." *Iko v. Shreve*, 535 F.3d at 238 (citing *Williams*, 77 F.3d at 761). Thus, courts must analyze both subjective and objective components. For the subjective component, Plaintiff must prove that Defendant assaulted and restrained him "maliciously and sadistically for the very purpose of causing harm" rather than in a good-faith effort to maintain or restore discipline. *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986).

5

The Fourth Circuit has instructed that district courts use the following test in order to analyze the subjective component of the excessive force for Plaintiff's cause of action:

> (1) "the need for the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) the extent of any reasonably perceived threat that the application of force was intended to quell; and (4) "any efforts made to temper the severity of a forceful response."

*Iko v. Shreve*, 535 F.3d at 239. To establish the objective component, Plaintiff must show "that the alleged wrongdoing is objectively 'harmful enough' to establish a constitutional violation" in the context of "contemporary standards of decency." *Hudson v. McMillian*, 503 U.S. 1, 2 (quoting *Wilson*, 501 U.S. at 303). When prison officials maliciously and sadistically use force to cause harm, there always exists a constitutional violation regardless of how significant a plaintiff's injury may be. *Id.*; *see also Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

Under the first factor, "the need for the application of force," the undersigned finds that Plaintiff denies he grabbed and held onto Defendant Truesdale's vest. *See* ECF No. 60 at 2; *see also* ECF No. 60-1 at ¶ 3. Plaintiff references an email from SCDC Police Services concerning the incident in his argument to the court that indicates:

> [Plaintiff] admits he was waiting for a food tray and when he realized he wasn't getting it just yet he stuck his arm through the food flap. He alleges CO Truesdale then grabbed his wrist and bent his arm almost up the glass on his cell door. He thought he was going to break his arm. He states at no time was he attempting to grab CO Truesdale's vest. He knows he should not have had his arm in the food flap, but does not believe CO Truesdale acted professionally and could have broken his arm. He was able to jerk his arm free back into the cell. He remembers being video recorded post incident by staff.

ECF No. 60-1 at 2. Additionally, Plaintiff references a witness statement from Inmate Olin Brown who appears to attest to seeing Defendant Truesdale grab, twist, and bend Plaintiff's arm. *Id.* at 7. Plaintiff also filed his grievance records concerning the incident in support of his argument. *Id.* at 10-13.

6

Conversely, the undersigned notes that Defendant Truesdale avers that on February 23, 2019, while he was serving breakfast, Plaintiff reached his arm out of the food flap and grabbed his vest. ECF No. 54-2 at ¶ 7. He attests that he tried to lean back and break Plaintiff's hold, but he was unable to do so. *Id.* Further, Defendant Truesdale represents that he held onto Plaintiff's arm, that Plaintiff was using to hold onto his vest, while he called for assistance from Sgt. Lambert. *Id.* at ¶ 8. In the incident report, Defendant Truesdale indicates that Plaintiff "stuck his arm out of the flap touching [his] vest and that's when [Defendant Truesdale] grab[bed] his hand and arm trying to keep him from striking [him] so [Defendant Truesdale] held his arm until Sgt. Lambert came to help and also medical was called." ECF No. 54-3. Defendant Truesdale also submits the affidavit of Antonio Lambert, a Sergeant who was the February 23, 2019 supervising officer on the day shift. ECF No. 54-4. He attests that he observed Plaintiff's arm out of his food flap grabbing Officer Truesdale at approximately 10:30 a.m. *Id.* at ¶ 5. Further, Lambert represents that he instructed Plaintiff to let Defendant Truesdale go, and Plaintiff complied. *Id.* at ¶ 6. Finally, he avers:

> While I observed the Plaintiff grabbing Officer Truesdale, I did not see Plaintiff's arm bent, twisted or slammed in the food flap. Further, I did not see any evidence of injury on the Plaintiff and Plaintiff made no statements to me that Officer Truesdale in any way used force on him or injured him.

*Id.* at ¶ 8. Notably, there is no video evidence to consider. Though there is some video related to the incident, it appears to depict the aftermath, and it was not presented to the court for review. ECF No. 58; 60-1 at 2. Thus, there is no indisputable evidence either confirming or denying either party's position. Therefore, based on the conflicting stories from the parties and their witnesses, the undersigned is unable to determine whether there was sufficient need for application of force under prong one of *Iko* based on Plaintiff's actions or inactions on the day of the incident.

The undersigned cannot effectively weigh the second and third *Iko* factors—"the relationship between the need and the amount of force that was used" and "the extent of any reasonably perceived threat that the application of force was intended to quell." Here, the parties have presented the court with two different versions of the facts giving rise to Defendant Truesdale's alleged use of force. Further, though Defendant represents excessive force was not used, Defendant has failed to present the court with any indisputable evidence, other than Plaintiff's medical history. Based on the evidence presented, the undersigned is unable to weigh the second *Iko* factor. Accordingly, based on the available evidence, the amount of force that was used or the need for the force applied remains a disputed issue of fact. Furthermore, the undersigned is unable to determine the third *Iko* factor—the extent of any reasonably perceived threat that the application of force was intended to quell. Whether Plaintiff was a threat to Defendant or anyone else when the incident occurred is unclear. Therefore, the undersigned is unable to weigh the third *Iko* factor.

The undersigned finds that the fourth *Iko* factor—"any efforts made to temper the severity of a forceful response"—appear to weigh in favor of Defendant Truesdale. In his response to summary judgment, Plaintiff represents that a medical report from after the incident indicates that Nurse McDowell examined Plaintiff and observed red discoloration and swelling in his upper arm area. ECF No. 60 at 3 (citing ECF No. 60-1 at 15). Plaintiff's medical records confirm that Plaintiff saw medical services on February 23, 2019. *Id.*; ECF No. 54-6. Further, it appears that the supervising officer, Sergeant Lambert, came to the scene of the incident, and did not see evidence of an injury. ECF No. 54-4 at ¶ 8. Further, he avers in his affidavit to the court that Plaintiff made no statements concerning Defendant Truesdale's use of force. *Id.* Therefore, the undersigned find that the fourth *Iko* factor weighs in favor of Defendant Truesdale.

Based on the differing accounts of the facts leading to Defendant's use of force, the undersigned is unable to recommend the district court find as a matter of law that either Defendant Truesdale used no force or used force in a good faith effort to maintain or restore discipline and not for the very purpose of causing harm. *See Whitley*, 475 U.S. at 320-21; *see also Dean v. Jones*, 984 F.3d 295, 306 (4th Cir. 2021) (holding a reasonable jury crediting plaintiff's version of events could infer under *Whitley* that force was used not to protect officer safety but instead to retaliate. . . ., and for that reason, Officer Hobgood is not entitled to summary judgment on the merits of Dean's Eighth Amendment claim); *see contra Shiheed v. Harding*, 802 F. App'x 765, 768 (4th Cir. 2020) (upholding summary judgment for officers where video evidence clearly demonstrated that excessive force was not used in violation of Eighth Amendment after analyzing the four-part test).  In his Complaint and Response in Opposition to Summary Judgment, Plaintiff alleges that Defendant Truesdale intentionally twisted his arm while Plaintiff posed no threat to him. Though Defendant maintains that if force was used, it was only in order to maintain order or discipline, the undersigned is tasked with construing the facts in the light most favorable to Plaintiff. Here, under this standard of review, the undersigned finds there is a genuine issue of material fact as to whether Defendant Truesdale's actions were excessive under the Eighth Amendment. *See e.g., Parker v. Stevenson*, 625 F. App'x 196, 199 (4th Cir. 2015) ("[I]n concluding that the record did not substantiate Parker's allegations, [the Report and Recommendation] failed to view the facts and the inferences drawn therefrom in the light most favorable to Parker."); *Brown v. Eagleton*, No. 4:14-CV-0357-BHH, 2015 WL 5781504, at *2 (D.S.C. Sept. 30, 2015) (where the district court declined to adopt a Report and Recommendation because "it [was] far from clear that the plaintiff's actions threatened prison officials or other inmates [and using] *Whitley* factors, the

Court f[ound] that there [was] a genuine issue of fact as to whether the defendant's actions in spraying the plaintiff with mace were 'applied in a good faith effort to maintain or restore discipline.'"); *Wright v. Mack*, No. CIV.A. 5:12-02232, 2013 WL 3946286, at *5 (D.S.C. July 31, 2013) (where the district court adopted an R&R finding there was "a genuine issue of fact as to whether Defendant Mack's actions in spraying Plaintiff with chemical munitions for purportedly refusing to stop yelling and kicking his cell door were 'applied in a good-faith effort to maintain or restore discipline.'"). Based on the genuine issues of material fact in this case, the undersigned recommends Defendants' Motion for Summary Judgment be denied on Plaintiff's excessive force claim. *See Dean v. Jones*, 984 F.3d 295, 306 (4th Cir. 2021) (holding a reasonable jury crediting plaintiff's version of events could infer under *Whitley* that force was used not to protect officer safety but instead to retaliate. . . ., and for that reason, Officer Hobgood is not entitled to summary judgment on the merits of Dean's Eighth Amendment claim); *Mann v. Failey*, 578 F. App'x 267, 275 (4th Cir. 2014) (holding a plaintiff's presentation of "necessary briefs, affidavits, and corroborative evidence to support his claims" created a jury issue and "disputes of credibility are reserved for a fact finder").

### B. Qualified Immunity

Defendant Truesdale asserts he is entitled to qualified immunity on Plaintiff's claims. ECF No. 54-1 at 7-8. The Supreme Court in *Harlow v. Fitzgerald* established the standard that the court is to follow in determining whether a defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. 800, 818 (1982).

When evaluating a qualified immunity defense, the court must determine (1) whether the facts alleged, taken in the light most favorable to the plaintiff, show that the defendant's conduct violated a constitutional right, and (2) whether that right was clearly established at the time of the alleged misconduct. *Pearson v. Callahan*, 555 U.S. 223, 230-33 (2009). The two prongs of the qualified immunity analysis may be addressed in whatever order is appropriate given the circumstances of the particular case. *Id.* at 236. In determining whether the right violated was clearly established, the court defines the right "in light of the specific context of the case, not as a broad general proposition." *Parrish v. Cleveland*, 372 F.3d 294, 301-03 (4th Cir. 2004). "If the right was not clearly established in the specific context of the case—that is, if it was not clear to a reasonable officer that the conduct in which he allegedly engaged was unlawful in the situation he confronted—then the law affords immunity from suit." *Id.* (citations and internal quotation omitted).

The record before the court does not indisputably show that Defendant performed the discretionary functions of his respective official duties in an objectively reasonable fashion. Viewed in the light most favorable to Plaintiff, Defendant could have transgressed Plaintiff's constitutional rights. Thus, the undersigned recommends Defendant Truesdale not be granted qualified immunity.

### C. Reply Brief Arguments

In Reply, Defendant Truesdale argues that Plaintiff's Eighth Amendment Claims should be dismissed pursuant to *Heck v. Humphrey*, 512 U.S. 477, 483 (1994) and collateral estoppel. ECF No. 61 at 1-5. Defendant also argues that certain portions of Plaintiff's witness's affidavit should be stricken for failure to comply with Rule 56(c)(4). *Id.* at 5. Defendants also address the

evidence Plaintiff presented in his Response and indicate why what is presented is not credible. *Id.* at 8-12.  The undersigned will address each argument in turn.

### 1.  Heck v. Humphrey

Defendant maintains that the Supreme Court case of *Heck v. Humphrey*, 512 U.S. 477 (1994) bars Plaintiff's civil action for damages.  ECF No. 61 at 1-3.  Specifically, Defendant Truesdale argues that because Plaintiff pleaded guilty to "Threatening to Inflict Harm on/Assaulting an Employee" on April 9, 2019, at a disciplinary hearing, he is prohibited from bringing this action because a judgment in Plaintiff's favor would imply the invalidly of his conviction or sentence. *Id.* at 3. The undersigned disagrees.

In a recent order, a South Carolina district court addressed *Heck* and whether it barred an inmate's action.  *See Rhodes v. Sterling*, 475 F. Supp. 3d 470, 474–75 (D.S.C. 2020).  There, the court, after carefully considering cases concerning the application of *Heck* and its progeny in challenges to disciplinary proceedings, concluded:    "[T]he *Heck* line of cases bar only those section 1983 actions seeking to set aside disciplinary convictions where the court's decision to set aside the disciplinary conviction would have some impact on the underlying criminal conviction or corresponding sentence."  *Id.* Here, Plaintiff's case does not concern overturning or challenging Plaintiff's disciplinary conviction. Therefore, in accordance with *Rhodes*, the undersigned finds *Heck* and the other cases discussing the application of *Heck* would not bar Plaintiff's civil action in this instance.  Thus, the undersigned recommends denying Defendant Truesdale summary judgment on this ground.

### 2.  Collateral Estoppel

Alternatively, Defendant Truesdale argues that the doctrine of collateral estoppel bars Plaintiff's allegation.  ECF No. 61 at 4-5.  Specifically, he maintains that Plaintiff's guilty plea or

admission to committing "a physical act of a threating nature" precludes him from now asserting that "he simply put his arm through the door flap to wait for an extra tray of food." *Id.* at 5. Thus, Defendant Truesdale maintains that, as a matter of law, Plaintiff committed "a physical act of a threatening nature" which "place[d] [him] in fear of bodily harm." *Id.* The undersigned disagrees.

Though a creative argument, the undersigned finds that the doctrine of collateral estoppel does not extend as far as Defendant Truesdale argues. Collateral estoppel, or issue preclusion, prohibits an issue from being relitigated that has been actually and necessarily decided in a court of law. *Sullivan v. Cnty. of Spartanburg*, No. 6:05-1282-HFF-WMC, 2005 WL 5807359, at *3 (D.S.C. May 10, 2005) *subsequently aff'd*, 225 F. App'x 121 (4th Cir. 2007) ("Preclusion by way of collateral estoppel must be considered in this context, since there is not the identity of parties required by strict *res judicata*."). "Under collateral estoppel [also known as 'issue preclusion'], once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. U.S.*, 440 U.S. 147, 153 (1979); *see also Sullivan*, 2005 WL 5807359, at *3 (emphasis in original) ("*Issue preclusion* is more narrow and operates to bar subsequent litigation of legal and factual issues common to both actions that were actually and necessary determined by the court in the prior litigation.").

Because this precise issue was not actually and necessary decided in a court of competent jurisdiction, the undersigned recommends denying Defendant Truesdale summary judgment based on the doctrine of collateral estoppel. Notably, other courts have not relied on collateral estoppel in a similar context or used a disciplinary conviction in this manner. Thus, the

13

undersigned cannot recommend that Plaintiff be precluded from bringing this lawsuit under this argument.

### 3. Evidentiary Issues

Finally, Defendant Truesdale makes several arguments concerning the alleged inadmissibility of the evidence Plaintiff presented. ECF No. 61 at 5-8. As thoroughly discussed above, Plaintiff has presented enough evidence, even without the Declaration of Inmate Brown, to survive summary judgment. Whether certain pieces of evidence will be admissible in a trial of this case, will be determined at a later time and once a trial date has been determined. The undersigned does not recommend altering any above recommendations based on the evidentiary arguments Defendant Truesdale makes in his Reply.

### IV. Conclusion and Recommendation

Based on the foregoing, it is recommended that Defendants' Motion for Summary Judgment, ECF No. 54, be **GRANTED IN PART AND DENIED IN PART**. As indicated above, with Plaintiff's express consent, Defendant SCDC is dismissed as a party to this action. However, the undersigned cannot recommend that the claims against Defendant Truesdale be dismissed at this time. Finally, the undersigned dismisses Plaintiff's Motion to Supplement, ECF No. 66, as moot.

IT IS SO RECOMMENDED.

October 20, 2021                                             Kaymani D. West
Florence, South Carolina                              United States Magistrate Judge

**The parties are directed to note the important information in the attached "Notice of Right to File Objections to Report and Recommendation."**